UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lois Dare,

Plaintiff

v.

Wal-Mart Stores, Inc.,

Defendant.

Civ. No. 02-0001 (PAM/RLE)

**MEMORANDUM AND ORDER**

---

This matter comes before the Court on Defendant's Motion for Summary Judgment on Plaintiff's racial discrimination claims. For the following reasons, the Court grants the Motion in part and stays the Motion in part, pending the Supreme Court's ruling in Costa v. Desert Palace, Inc., 299 F.3d 838 (9th Cir. 2002), cert. granted, 123 S. Ct. 816 (2003).

**BACKGROUND**

In November 2000, the Elk River Wal-Mart store, a local outlet for Defendant Wal-Mart Stores, Inc. ("Wal-Mart"), began accepting applications and conducting interviews for all positions in anticipation of its January 2001 opening. On November 25, 2000, Plaintiff Lois Dare, an African-American woman, completed an application, expressing an interest in the Elk River Wal-Mart store's vision center. Dare's application included various misrepresentations about her employment history and educational background. After completing the application, Dare met with an assistant manager, who advised Dare to contact the store's hiring personnel in a week if she had not heard anything from them. A week

MAY 0 9 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

passed without any contact from Wal-Mart, and Dare made a follow-up phone call. Dare continued to leave messages for the manager of the vision center, Kristen Lage. Lage did not return any of the phone calls. Dare subsequently asked her job placement specialist to call the store on her behalf. The job specialist did so and within days, Lage called Dare for an interview.

On December 12, 2000, Lage interviewed Dare. The parties dispute the positions in which Dare was interested. Wal-Mart contends that Dare was only interested in the vision center lab technician position, while Dare claims that she informed Lage of her intent to apply for any available position at the store. Lage advised Dare that a current employee from the Brooklyn Park Wal-Mart vision center might be transferred to fill the lab technician position. On January 16, 2001, Wal-Mart approved the employee's transfer. Shortly thereafter, Lage informed Dare of the transfer and offered to forward Dare's application to another manager, Stephanie Miller, for consideration on other openings.

After the initial interview with Lage, Dare drove to the Brooklyn Park store to fill out an application there, in the event that the employee transferred to the Elk River store. On this application, Dare noted her interest in any position. Dare was never contacted about employment at the Brooklyn Park store.

The parties dispute the facts concerning what transpired on opening day, January 24, 2001. On that day, Dare went to the Elk River store and met with Miller. According to Wal-Mart, Miller offered to set up a time for an interview, but Dare stated that she did not have

her calendar with her and that she would give Miller a call. (Miller Dep. at 50.) Dare never contacted Miller. (Id.) In contrast Dare denies that Miller ever offered her an interview. (Dare Dep. 110-11; Hedican Aff. Ex. 14 at 2 ("Did they offer you any interview that day? No.") On that same day, Dare filed a charge of discrimination with the Minnesota Department of Human Rights, cross-filed with the Equal Employment Opportunity Commission ("EEOC"). In the charge, Dare did not mention the Brooklyn Park store, and referenced only the Elk River store and Wal-Mart in general. The EEOC determined that "there is reason to believe that violations [of Title VII] have occurred." (Hedican Aff. Ex. 25; O'Donnell Aff. Ex. M.)

After receiving a right-to-sue-letter, Dare commenced this action on January 2, 2002, alleging that Wal-Mart refused to hire her because of her race. Dare alleges violations of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.03, and of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq. Wal-Mart moves for summary judgment on Dare's claims.

**DISCUSSION**

First, the Court dismisses the Title VII claim against the Brooklyn Park store due to Dare's failure to exhaust the available administrative remedies. While Wal-Mart argues that Dare's MHRA claim against the Brooklyn Park store is barred by the one-year statute of limitations, the Court finds that Dare filed her MHRA claim within the statute of limitations. However, Dare has failed to establish the prima facie elements of her claim with respect to

the Brooklyn Park store and summary judgment on that claim is appropriate.

Second, the Court stays Wal-Mart's Motion for Summary Judgment on Dare's discrimination claims against the Elk River store pending the Supreme Court's decision in Costa. Dare argues that Wal-Mart refused to hire her for the lab technician position at the Elk River store because of her race. In addition, she contends that Wal-Mart refused to hire her for any other position at the Elk River store because of her race. Questions of fact remain on Dare's prima facie case of discrimination with respect to the lab technician position and with respect to the other positions at the Elk River store. On April 21, 2003, the Supreme Court heard oral argument on whether a plaintiff must present direct evidence of discrimination in order to make a "mixed-motive" claim of discrimination. The outcome of the Costa case has broad implications for lower courts analyzing discrimination claims and could effect the allocation of burdens in such claims. Therefore, the Court stays the Motion pending the Supreme Court's ruling on the issue.

### A. Standard of Review

Wal-Mart moves for summary judgment pursuant to Rule 56(c), which provides that such a motion shall be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party. Enter. Bank v. Magna Bank, 92 F.3d 740, 747 (8th Cir. 1996).

The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B. Brooklyn Park Claims**

1. Title VII Claim

Title VII claims can only be litigated if they were initially included in the EEOC charge or grew out of or are reasonably related to the administrative charge. Phillip v. ANR Freight Servs., Inc., 61 F.3d 669, 676 (8th Cir. 1995). The charge must include the date, place, and circumstances of the alleged unlawful employment practice. EEOC v. Shell Oil Co., 466 U.S. 77, 78 (1984). Here, Dare's EEOC charge makes no mention of the Brooklyn Park store. (Hedican Aff. Ex. 5; O'Donnell Aff. Ex. A.) She admits as much in her response to summary judgment, arguing only that the notes of her interview with an EEOC representative, and not the charge itself, show that Dare intended to include the Brooklyn Park store in her EEOC charge. (Hedican Aff. Ex. 14; O'Donnell Aff. Ex. H) Therefore, her Title VII claims regarding the Brooklyn Park store are barred.

2. MHRA Claim

a. Statute of Limitations

The MHRA does not require the exhaustion of administrative remedies prior to filing

suit. Wal-Mart argues that the one-year statute of limitations bars Dare's MHRA claim against the Brooklyn Park store. The Court disagrees. Dare applied for a job at the Brooklyn Park store on December 12, 2000. In its Memorandum in support of the Motion, Wal-Mart treats Dare's Brooklyn Park application as "active" for several weeks. (Def.'s Mem. at 22 ("The Brooklyn Park store did, however, hire 23 employees in the general store while Ms. Dare's application was active.") (citing Thorner Aff. ¶¶ 3-4).) Thorner Avers that these 23 employees were hired between December 15, 2000, and February 15, 2001. (Thorner Aff. ¶¶ 3-4.) The evidence shows that Wal-Mart considered Dare's application, filed on December 12, 2000, to be active through February 2001. Her claim of racial discrimination is based on Wal-Mart's refusal to consider her application during the entire period that it was active. Therefore, the statute of limitations would not have begun to run until mid-February, 2001, at the earliest. Dare filed the instant action on January 2, 2002, and Wal-Mart was served on January 7, 2002, weeks before the statute of limitations period expired. Thus, while the Court dismisses the Title VII claim against the Brooklyn Park store, the MHRA claim remains.

b. Prima Facie Case

To establish a prima facie case of race discrimination for a failure-to-hire claim a plaintiff must show the following four elements:

1. That she is a member of the protected class;
2. That she applied and was qualified for a job for which the employer was

seeking applicants;

3. That she was rejected; and

4. That after rejecting plaintiff, the employer continued to seek applicants with plaintiff's qualifications.

Caviness v. Nucor-Yamato Steel Co., 105 F.3d 1216,1223 (8th Cir. 1997); see also Mems v. City of St. Paul Dep't of Fire & Safety Servs., No. 02-1834, — F.3d —, 2003 WL 1969278, *11 n.11 (8th Cir. Apr. 30, 2003) (holding that MHRA and Title VII claims are treated under the same analysis).

In this case, there is no dispute as to the first and third elements. However, Dare has failed to create a question of fact on the second and fourth elements with respect to the Brooklyn Park store. Although Dare presents scarce evidence regarding the Brooklyn Park store and has not shown that Wal-Mart was seeking applicants for the lab technician position at that store, Dare requested that she be considered for other positions at the Brooklyn Park store and the evidence shows that Brooklyn Park hired 23 applicants in the two months following Dare's application.

Wal-Mart mistakenly argues that because it hired 19 African-Americans at the Brooklyn Park store, Dare's race discrimination claim against them must fail. This argument misstates the relevant inquiry, however. The relevant comparable group to Dare in a disparate treatment case such as this is not other African-Americans, but other similarly situated non-minorities. In other words, if any of the non-African-American applicants hired

by Wal-Mart at the Brooklyn Park store were less qualified than Dare, she has a case for disparate treatment, regardless of how many other African-Americans were hired. Nevertheless, Dare presents no evidence that she was qualified for any of the other positions at the Brooklyn Park store. Nor does she establish that Wal-Mart hired other, less-qualified, non-minorities over her for those positions. Therefore, Dare fails to establish a prima facie case on her discrimination claim regarding the Brooklyn Park store.

### B. Elk River Store Claims

Dare makes two separate claims for failure to hire against Wal-Mart with respect to its Elk River store. First, she argues that Wal-Mart discriminated against her in refusing to hire her for the lab technician position. Second, she contends that Wal-Mart violated the provisions of Title VII and the MHRA when it refused to hire her for any other position at the Elk River store. Dare presents evidence sufficient to create a question of fact on each of the disputed elements of her prima facie case. Because of the possibility that the Supreme Court's ruling in Costa could effect the allocation of burdens once a plaintiff establishes a prima facie case, the Court declines to proceed further. Instead, the Court stays its ruling on Wal-Mart's summary judgment Motion with respect to the Elk River store claims.

#### 1. After-Acquired Evidence

Wal-Mart attempts to rebut Dare's prima facie case of discrimination, arguing that after-acquired evidence of material misrepresentations on her employment applications renders Dare unqualified for the lab technician position and for any other positions at the

store. In addition, Wal-Mart relies on after-acquired evidence of Dare's medical conditions, which allegedly limited her ability to perform the duties of the lab technician position and the other positions at the store. This evidence, however, cannot be used to challenge Dare's prima facie case. After-acquired evidence is relevant only as to damages such as back pay.

Wal-Mart relies on Frey v. Ramsey County Community Human Services, 517 N.W.2d 591, 597-98 (Minn. Ct. App. 1994), arguing that it stands for the proposition that after-acquired evidence may bar a discrimination claim. However, a subsequent United States Supreme Court ruling rejected that proposition. McKennan v. Nashville Banner Pub. Co., 513 U.S. 352, 358 (1994) (allowing after-acquired evidence of wrongdoing to bar all relief for a violation contradicts the remedial purposes of Title VII and other anti-discrimination statutes).

Minnesota appellate courts have split in attempting to apply Frey and/or McKennan. One unpublished opinion exemplifies Wal-Mart's position. "A claimant's misrepresentation on an application can bar recovery on a claim of discriminatory discharge or failure to hire. But the employer bears the burden of proving that it would not have hired the individual had it known of the misrepresentation." Hamlin v. Super 8 Motel of Fosston, Inc., No. C3-99-1284, 2000 WL 622264, *2 n.1 (Minn. Ct. App. May 16, 2000) (unpublished opinion) (citations omitted). However, another unpublished opinion follows the McKennan decision, characterizing Frey so as to make the two decisions consistent with one another.

> In Frey, we emphasized concerns in relying on after-acquired evidence in situations in which the employee originally was qualified for a job, but

> committed misconduct during the course of employment that would have justified dismissal. [517 N.W.2d 591], at 599. We noted that this use of after-acquired evidence would allow an employer that has committed unlawful discrimination to then "rummage through employment records to uncover a 'nondiscriminatory' reason for discharge" and escape liability. Id.
>
> We follow McKennon and hold that after-acquired evidence cannot automatically bar [a plaintiff's] discrimination claims. The district court therefore erred in relying on the after-acquired evidence doctrine to bar absolutely [a plaintiff's] claims.

Bischel v. State, No. C1-95-240, 1995 WL 434444, *3 (Minn. Ct. App. July 25, 1995) (unpublished opinion). The courts in this District follow Bischel and McKennan rather than Wal-Mart's characterization of Frey. E.g., Chang v. Cargill, Inc., 168 F. Supp. 2d 1003, 1009 (D. Minn. 2001) (Doty, J.); Waag v. Thomas Pontiac, Buick, GMC Inc., 930 F. Supp. 393, 408-09 (D. Minn. 1996) (Lebedoff, M. J.); Doe v. Marshalls, Inc., Civ. Nos. 3-94-463, 3-93-267, 1994 WL 66061, *3 (D. Minn. Jan. 10, 1994) (Magnuson, J.) (holding that the application of the after-acquired evidence doctrine to bar a discrimination claim "is inconsistent with the public policy underlying Title VII and the Minnesota Human Rights Act").

As this Court has held in the past, see Doe, 1994 WL 66061 at *3, and as the Supreme Court held in McKennan, 513 U.S. at 358, accepting Wal-Mart's interpretation of Frey undermines the purposes of Title VII and the MHRA. The decision in McKennan extends to state anti-discrimination statutes, and an employer may not escape liability by relying on evidence that played no part in its employment decision. See Ross v. Garner Printing Co., 285 F.3d 1106, 1112 n.3 (8th Cir. 2002) (noting that both the Iowa Supreme Court, Walters

v. United States Gypsum Co., 537 N.W.2d 708, 709-11 (Iowa 1995), and the Texas Supreme Court, Trico Tech. Corp. v. Montiel, 949 S.W.2d 308, 312 (Tex.1997), have applied McKennan to state anti-discrimination laws.) Therefore, Wal-Mart cannot challenge Dare's employment qualifications with after-acquired evidence. Likewise, Wal-Mart cannot depend on after-acquired evidence in an attempt to show that it had legitimate, non-discriminatory reasons for the decision it made. After-acquired evidence is only relevant to determine damages, regardless of whether the plaintiff has brought a state or federal discrimination claim.

2. Prima Facie Case

As noted above, to prove a prima facie case of racial discrimination in an employer's decision not to hire an applicant, the applicant must establish the following elements: (1) that she is a member of the protected class; (2) that she applied and was qualified for a job for which the employer was seeking applicants; (3) that she was rejected; and (4) that after rejecting plaintiff, the employer continued to seek applicants with plaintiff's qualifications. Caviness, 105 F.3d at 1223.

First, questions of fact remain on Dare's claim that Wal-Mart refused to hire her as a lab technician. While the parties do not dispute the first and third prima facie elements of this claim, Wal-Mart does contest the second and fourth elements. Relying on after-acquired evidence, Wal-Mart contends that Dare did have the requisite qualifications for employment. However, as noted above, Wal-Mart's reliance on this evidence is misplaced. Dare offers

evidence of her qualifications and work experience sufficient to at least create a question of fact on the second element of her prima facie case. Likewise, both parties present evidence concerning the qualifications of the employee who ultimately filled the lab technician position. At this stage of the litigation, the Court must resolve such factual disputes in Dare's favor. Therefore, questions of fact remain on whether Dare has established all of the elements of her prima facie case with respect to the lab technician position.

Second, questions of fact remain with respect to Dare's claim that Wal-Mart refused to hire her for any other open position at the Elk River store because of her race. The parties dispute elements two and three of the prima facie case. To begin with, Wal-Mart contests whether Dare ever applied for other vacant positions at the Elk River store. In response, Dare claims that in her December 12, 2000, interview with Kristen Lage, she expressed a willingness to work in other positions at the vision center besides that of lab technician and a desire to also be considered for any vacant position in the entire Elk River store. Wal-Mart denies this, but its own evidence establishes that Dare expressed interest in other positions. (Miller Depo. 69-70; Hedican Aff. Ex. 13, Stephanie Miller's Statement to the EEOC (written "Kirsten [sic] also mentioned to me that Lois would maybe work somewhere else in the store . . . . I remember talking to Lois again, this time about getting a job somewhere else in the store, I do not remember why we did not set up an interview.").) Therefore, Dare has at least created a question of fact on whether she applied for any other position at the Elk River store.

Wal-Mart then argues that Dare failed to establish that it rejected her application for employment. According to Wal-Mart, on the day the Elk River store opened, January 24, 2001, Dare entered the store and confronted Stephanie Miller, a store manager, asking why Wal-Mart had not contacted her for an interview. (Miller Dep. at 50.) Miller explained that she had been too busy to interview Dare, but offered to schedule an interview with her. (Id.) Dare declined, stating that she did not have her calendar with her so she could not schedule the interview. (Id.; Hedican Aff. Ex. 13.) Miller then asked Dare to contact the store when she had retrieved her calendar and offered to schedule an interview at that time, but Dare never called Miller back. (Miller Dep. at 50; Hedican Aff. Ex. 13.) Instead, that very day, January 24, 2001, Dare filed a discrimination claim against the store with the EEOC. (See Hedican Aff. Ex. 5.) Wal-Mart essentially argues that because Dare chose not to contact Miller, despite Miller's willingness to interview her, she cannot establish that Wal-Mart rejected her application. Instead, Wal-Mart reasons, the record shows that Dare decided not to pursue the possibility of employment in any of the other vacant positions at the Elk River store.

These facts are in dispute. Dare claims that when she confronted Miller, the Wal-Mart manager did not offer to interview her. Instead, according to Dare, Miller agreed to call Dare at some later time, once she had a chance to review Dare's application. Both parties append to their briefs the notes memorializing the substance of an interview that Dare had with the EEOC. (See Hedican Aff. Ex. 14; O'Donnell Aff. Ex. H.) In the interview, the EEOC

representative's notes lend credence to Dare's version of events:

> [Dare] met with Stephanie [Miller]. They shake hands and [Dare] explained that she was to receive a drug test by mail which she did not. Stephanie [Miller] told [Dare] that she will go over her application and will give her a call. [Dare] said fine, and left. . . . Did they offer you an interview that day? No. How many interview you received? The first day of her application with the male person and on 12/11/00 with Kirsten [sic]. . . . Did they ask you that you needed to have a third interview? No. They always told her that . . . [they] will get back with her.

(Id.) While neither party attached the relevant portions of Dare's deposition on this point, Wal-Mart included an excerpt from Dare's deposition describing what happened on January 24, 2001:

> A. So physically, I wanted to go up to the store, the day the store opened, and I wanted to see for myself if there's only one person in that position.
> . . . .
> Q. So you go up there to see for yourself. What do you see?
> A. I see a bunch of Caucasian peoples and none of them minority and none of them black.
> . . . .
> Q. And that's in the vision center, correct?
> A. That's all over the store.
> Q. You didn't see a single minority in the entire store?
> A. In the entire store.
> . . . .
> Q. So you go in and you see that there are at least I think you said three Caucasian females working in the vision center. What do you do next?
> A. Walk out the door.
> Q. What happens next? What do you do next?
> A. I believe I went to an attorney because I feel that I was, you know, treated wrongfully here.

(Dare Dep. at 110-11.) The scarce evidence concerning the events of January 24, 2001, is sufficient to create a question of fact on whether Miller offered to interview Dare. Similarly,

a dispute remains over which version of the facts is correct. Dare has at least created questions of fact on each disputed component of her prima facie case.

3. Wal-Mart's Burden

Under the traditional shifting burden paradigm, see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), once a plaintiff has established a prima facie case of discrimination, the defendant has the burden to articulate a legitimate, non-discriminatory reason for its decision. Schiltz v. Burlington N. R.R., 115 F.3d 1407, 1412 (8th Cir. 1997) (applying the McDonnell Douglas approach to a refusal-to-hire claim like the one at bar). However, the Costa case, now pending before the Supreme Court, could affect the allocation of burdens in discrimination cases. In fact, this Court anticipates that the ruling in Costa might change the face of employment discrimination law.

The alternatives to the McDonnell Douglas pretext scheme are those articulated in Price Waterhouse v. Hopkins, 490 U.S. 228, 269-70 (1989) and the Civil Rights Act of 1991. In Price Waterhouse, the four-justice plurality determined that mixed motive cases required a different test than single motive cases. Id. at 240 n.6. Instead of requiring the defendant to articulate a legitimate, non-discriminatory reason for the employment action and requiring the plaintiff to prove that the proffered reason is a pretext for discriminatory motive, the defendant would have to show, by a preponderance of the evidence, that it would have made the same decision, regardless of the plaintiff's membership in a protected class. Id. at 258. In her concurring opinion, now considered the controlling opinion, Justice O'Connor

narrowed the reach of the four-justice plurality when she concluded that the defendant should bear the burden of proof in mixed motive cases only where the plaintiff has first presented direct evidence that the employer's "decisional process has been substantially infected by discrimination." Id. at 269-70.

In Costa, the Ninth Circuit questioned the validity of this distinction, noting that Congress intended to overrule the plurality opinion in Price Waterhouse when it enacted the Civil Rights Act of 1991:

> The legislative history evinces a clear intent to overrule Price Waterhouse. In a subsection titled "The Need to overturn Price Waterhouse," the report accompanying the 1991 Civil Rights Act reflects congressional concern that the "inevitable effect of the Price Waterhouse decision [was] to permit prohibited employment discrimination to escape sanction under Title VII."

Costa, 299 F.3d 838, 850 (quoting H.R.Rep. No. 102-40(I), at 46 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 584). The Costa court quoted the report further: "[t]he effectiveness of Title VII's ban on discrimination on the basis of race, color, religion, sex, or nation origin has been severely undercut by the recent Supreme Court decision in Price Waterhouse v. Hopkins." (Id.) Because the Civil Rights Act of 1991 makes no mention of Justice O'Connor's direct/indirect evidence distinction, the Ninth Circuit concluded that Congress had eviscerated the distinction's legal effect. Id. (the legislative history shows beyond doubt "that the premise for Justice O'Connor's comment is wholly abrogated. . . . Consequently, there is no longer a basis for any special 'evidentiary scheme' or heightened standard of proof to determine 'but for' causation.").

More profoundly, the Civil Rights Act of 1991 makes no mention of a distinction between single and mixed motive cases. Instead, it amended Title VII, so that "an unlawful unemployment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). In response, the defendant in a Title VII case may avoid having to pay damages by raising an affirmative defense and proving that it "would have taken the same action in the absence of the impermissible motivating factor." 42 U.S.C. § 2000e-5(g)(2)(B). Therefore, the Civil Rights Act of 1991 should have made two distinctions irrelevant: the distinction between single and mixed motive cases and the distinction between direct and indirect evidence.

However, the law of this Circuit stands in contrast to the plain language of the Civil Rights Act of 1991. "At some point in the proceedings, of course, the District Court must decide whether a particular case involves mixed motives." Price Waterhouse, 490 U.S. at 247 n.12 (1989). To make that decision, our Court of Appeals instructs lower courts to consider whether the plaintiff has presented direct or indirect evidence, following Justice O'Connor's distinction in Price Waterhouse:

> The framework for evaluating a Title VII discrimination claim depends on the type of evidence presented in support of the claim. Where the plaintiff relies primarily on circumstantial evidence, courts apply a tripartite analysis as set forth in [McDonnell Douglas]. . . .
>
> In some situations, however, a plaintiff can produce direct evidence that an illegal criterion was a motivating factor in the disputed employment decision. . . . In those cases, the plaintiff is relieved of the ultimate burden of persuasion and the so-called "mixed motive" analysis is applied.

Mohr v. Dustrol, Inc. 306 F.3d 636, 639-40 (8th Cir. 2002) (citing Price Waterhouse, 490 U.S. 228 (generally) and Gagnon v. Sprint Corp., 284 F.3d 839, 847-49 (8th Cir. 2002)).

In this case, the Court finds no direct evidence of discriminatory motive in the record. As a result, the Court would normally follow the McDonnell Douglas paradigm. However, because the Supreme Court is considering the appeal of Costa, the Court declines to proceed further. The Court anticipates that, in the face of the plain language of the Civil Rights Act of 1991, the Supreme Court will limit the effect of or do away with entirely the single/mixed motive distinction and the direct/indirect evidence distinction. Therefore, the Court stays Wal-Mart's Motion pending the outcome of Costa.

**CONCLUSION**

Dare did not exhaust her administrative remedies with respect to her Title VII claim against Wal Mart for failing to hire her at its Brooklyn Park store. Dare also failed to establish a prima facie case of discrimination under the MHRA against Wal-Mart for failing to hire her at its Brooklyn Park store. Dare has created questions of fact on all relevant elements of her prima facie case of racial discrimination against Wal-Mart for refusing to hire her as a lab technician or as an employee in any open position at its Elk River store. However, the Court declines to proceed beyond an evaluation of the prima facie case because the Supreme Court decision in Costa may affect the allocation of burdens in discrimination cases such as the one at bar.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary

Judgment (Clerk Doc. No. 35) is **GRANTED in part** and **STAYED in part** as follows:

1. Plaintiff's Title VII claim against Defendant for conduct occurring at Defendant's Brooklyn Park store is **DISMISSED**;

2. Defendant's Motion is **GRANTED** with respect to Plaintiff's MHRA claim against Defendant for conduct occurring at Defendant's Brooklyn Park store; and

3. Defendant's Motion is **STAYED** pending the Supreme Court's decision in Costa v. Desert Palace, Inc., 299 F.3d 838 (9th Cir. 2002), cert. granted, 123 S. Ct. 816 (2003), with respect to Plaintiff's Title VII and MHRA claims against Defendant for conduct occurring at Defendant's Elk River store.

Dated: May 8, 2003

Paul A. Magnuson
United States District Court Judge