UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lois Dare,

Plaintiff

v.

Wal-Mart Stores, Inc.,

Defendant.

Civ. No. 02-01 (PAM/RLE)

**MEMORANDUM AND ORDER**

---

This matter comes before the Court on a portion of the Motion for Summary Judgment filed by Defendant Wal-Mart Stores, Inc. ("Wal-Mart") on Plaintiff Lois Dare's racial discrimination claims. Previously, the Court stayed in part the Motion pending a ruling by the Supreme Court in a case on appeal from the Ninth Circuit, Costa v. Desert Palace, Inc., 299 F.3d 838 (9th Cir. 2002), cert. granted, 123 S. Ct. 816 (2003). On June 9, 2003, the Supreme Court unanimously decided the issue on appeal. Desert Palace, Inc. v. Costa, No. 02-679 (U.S. June 9, 2003). For the following reasons, the Court denies the remaining aspects of the Motion in part and grants them in part.

The facts of this case were sufficiently laid out in this Court's prior Order, Dare v. Mal-Mart Stores, Inc., No. 02-01, 2003 WL 21147657 (D. Minn. May 8, 2003), and the Court need not repeat them here. In its prior Order the Court dismissed Dare's claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., against Wal-Mart for conduct occurring at Wal-Mart's Brooklyn Park store. In addition, the Court granted in part Wal-Mart's Motion for Summary Judgment on Dare's Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.03, claim against Defendant for conduct occurring

FILED JUN 13 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

at Wal-Mart's Brooklyn Park store. However, the Court stayed consideration of Wal-Mart's Motion for Summary Judgment on Dare's Title VII and MHRA claims for conduct occurring at Wal-Mart's Elk River store.

## DISCUSSION

### A. Standard of Review

Wal-Mart moves for summary judgment pursuant to Rule 56(c), which provides that such a motion shall be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party. Enter. Bank v. Magna Bank, 92 F.3d 740, 747 (8th Cir. 1996).

The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995).

### B. The Consequences of Desert Palace

#### 1. The Pre-Desert Palace Landscape

Prior to the decision in Desert Palace, plaintiffs in discrimination cases could proceed under one of two different paradigms: the ubiquitous McDonnell Douglas burden-shifting

scheme, see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); or the mixed-motive analysis articulated in Price Waterhouse v. Hopkins, 490 U.S. 228, 269-70 (1989), and revised by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e-2(m), 2000e-5(2)(B).[1]

Before the Supreme Court decision in Desert Palace, courts nationwide followed Justice O'Connor's distinction in her concurring opinion in Price Waterhouse, 490 U.S. at 269-70. In this Circuit, a courts' application of one or the other paradigm depended entirely on whether the plaintiff had presented direct or indirect evidence of a discriminatory motive:

> The framework for evaluating a Title VII discrimination claim depends on the type of evidence presented in support of the claim. Where the plaintiff relies primarily on circumstantial evidence, courts apply a tripartite analysis as set forth in [McDonnell Douglas]. . . .
>
> In some situations, however, a plaintiff can produce direct evidence that an illegal criterion was a motivating factor in the disputed employment decision. . . . In those cases, the plaintiff is relieved of the ultimate burden of persuasion and the so-called "mixed motive" analysis is applied.

Mohr v. Dustrol, Inc. 306 F.3d 636, 639-40 (8th Cir. 2002) (citing Price Waterhouse, (generally) and Gagnon v. Sprint Corp., 284 F.3d 839, 847-49 (8th Cir. 2002)). Only rarely

---

[1] The Ninth Circuit concluded that "the legislative history evinces a clear intent to overrule Price Waterhouse." Costa, 299 F.3d 838, 850. That Circuit stated that a portion of report accompanying the Act (titled "The Need to overturn Price Waterhouse") reflects congress's concern that the "inevitable effect of the Price Waterhouse decision [was] to permit prohibited employment discrimination to escape sanction under Title VII." Id. (quoting H.R. Rep. No. 102-40(I), at 46 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 584). The report continued: "[t]he effectiveness of Title VII's ban on discrimination on the basis of race, color, religion, sex, or nation origin has been severely undercut by the recent Supreme Court decision in Price Waterhouse v. Hopkins." Id. Despite this intent, courts across the country, including this Court continued to follow the concurring opinion written by Justice O'Connor. The recent Supreme Court decision finally gives effect to the Civil Rights Act of 1991.

did plaintiffs present direct evidence of a discriminatory motive. Thus, application of the McDonnell Douglas paradigm was much more common than the alternative burden-shifting scheme set forth in the Civil Rights Act of 1991.

In this case, as stated in the prior Order, the Court finds no direct evidence of discriminatory motive in the record. Dare, 2003 WL 21147657, at *9. As a result, the Court would have followed the McDonnell Douglas burden-shifting paradigm. However, because the Supreme Court had agreed to hear the appeal of Desert Palace, the Court stayed the part of Defendant's Motion that was potentially affected by the pending ruling. Now that the Supreme Court has issued its opinion, this Court may proceed.

2. The Holding in *Desert Palace*

In Desert Palace, the Supreme Court considered the appeal of a Ninth Circuit decision holding that the Civil Rights Act of 1991 overruled the direct/indirect evidence distinction made in Justice O'Connor's concurring opinion in Price Waterhouse. The Circuit Court of Appeals carefully explained how the Civil Rights Act of 1991 differed from the McDonnell Douglas burden-shifting scheme and concluded that Congress intended to replace the allocation of burdens under McDonnell Douglas with an alternative analysis. Costa, 299 F.3d at 847-51. The Civil Rights Act of 1991 states that a plaintiff satisfies its burden of proof when she "demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice." 42 U.S.C. § 2000e-2(m). In response, a defendant may avoid having to pay damages by proving an affirmative defense that it "would have taken the

same action in the absence of the impermissible motivating factor." 42 U.S.C. § 2000e-5(g)(2)(B). Thus, instead of requiring the defendant to produce a legitimate, nondiscriminatory reason and then shifting the burden of proof to plaintiff to prove that this proffered nondiscriminatory reason was false and a pretext for a discriminatory motive, the defendant bears the burden of proof on the "same decision test." The Ninth Circuit concluded that the Civil Rights Act of 1991 applied regardless of whether a plaintiff introduced direct evidence or instead solely relied on indirect evidence. Costa, 299 F.3d at 853-54.

The Supreme Court unanimously affirmed the Ninth Circuit, holding that, a plaintiff need not offer direct evidence of discriminatory motive to proceed under a mixed-motive analysis. Desert Palace, slip op. at 10 ("we agree with the Court of Appeals that no heightened showing is required under § 2000e-2(m)"). Thus, the Supreme Court abrogated the direct/indirect evidence distinction articulated in Justice O'Connor's Price Waterhouse concurrence, 490 U.S. at 269-70, and thereby eviscerated the effect of the instructions given by the Eighth Circuit in Mohr, 306 F.3d at 639-40, and Gagnon, 284 F.3d at 847-49.

The Supreme Court based its decision on the fact that "the words of the statute are unambiguous" and that "the statute does not mention, much less require, that a plaintiff make a heightened showing through direct evidence." Desert Palace, slip op. at 7-8. However, the Supreme Court declined to determine whether the Civil Rights Act of 1991 "applies outside of the mixed-motive context." Id., slip op. at 3 n.1.

3. Applicability of the Civil Rights Act of 1991 to Single-Motive Claims

In this case, Dare apparently pleads a single motive case. She contends that Wal-mart refused to hire her because of her race. Although the Supreme Court did not address these types of claims, based on the statutory analysis in Desert Palace, this Court finds that the holding in Desert Palace applies to Dare's claims. "[T]he words of the statute are unambiguous" and nothing in the plain meaning of § 2000e-2(m) and § 2000e-5(2)(B) expressly restricts the Civil Rights Act of 1991 to mixed-motive cases. Instead, the Civil Rights Act of 1991 states that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." While the final phrase may imply multiple motives, nothing in the statute's language restricts its applicability to single-motive cases. Rather, the plain language of the statute allows a plaintiff to prevail if he or she can prove by a preponderance of the evidence that a single, illegitimate motive was a motivating factor in an employment decision, without having to allege that other factors also motivated the decision. The Court finds that in enacting the Civil Rights Act of 1991, Congress sought to penalize employers for considering the race, color, religion, sex, or national origin of its employees when making employment decisions, whether the employees' membership in one or more of these protected classes was the single motive for the employment decision or was only one of multiple motives for the employment decision. Therefore, because the Civil Rights Act of 1991 unambiguously

prohibits any degree of consideration of a plaintiff's race, gender or other enumerated classification in making an employment decision, it must also extend to single-motive claims.

In addition to the plain meaning of the statute, the interests of clarity and accuracy support the Court's decision to allow plaintiffs to bring single-motive claims according to the allocations of burdens articulated in Civil Rights Act of 1991. Moreover, evaluating single-motive claims under the McDonnell Douglas burden-shifting scheme inevitably and paradoxically leads to a classic mixed-motive scenario. Finally, the process dictated by the Civil Rights Act of 1991 is more useful than the analysis required by McDonnell Douglas.

Under McDonnell Douglas, and assuming that a plaintiff establishes a prima facie case, or at least creates questions of fact on each of the elements of that prima facie case, the defendant then must present a legitimate, nondiscriminatory reason for the employment action. In a single-motive case, the dichotomy is complete: either the plaintiff is correct in alleging that an illegitimate factor alone motivated the defendant or the defendant's legitimate nondiscriminatory reason was the only reason for the decision. The Court must decide which factor was the sole basis for the employment decision. To do so, McDonnell Douglas requires that the plaintiff challenge the defendant's proffered reason. A plaintiff must show that the proffered reason is false, and that it is a pretext for the discriminatory motive proposed by the plaintiff. Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995). In considering the parties' mutually exclusive reasons for the employment decision, only two scenarios are possible: either the defendant's proffered reason is (a) true

and valid; or it is (b) false and invalid. Under the second scenario, the plaintiff would prevail. However, under scenario "(a)," McDonnell Douglas would result in a victory for the defendant. The Court is concerned that the analysis in scenario "(a)" is incomplete, illogical, and prohibited by the Civil Rights Act of 1991.

The dichotomy produced by the McDonnell Douglas framework is a false one. In practice, few employment decisions are made solely on basis of one rationale to the exclusion of all others. Instead, most employment decisions are the result of the interaction of various factors, legitimate and at times illegitimate, objective and subjective, rational and irrational. The Court does not see the efficacy in perpetuating this legal fiction implicitly exposed by the Supreme Court's ruling in Desert Palace. When possible, this Court seeks to avoid those machinations of jurisprudence that do not comport with common sense and basic understandings of human interaction.

Even putting the concerns of reality aside, however, a plaintiff's unsuccessful challenge to the defendant's non-discriminatory rationale should not automatically allow the defendant to escape liability. Instead, it should merely subject the defendant to the mixed-motive analysis dictated by the Civil Rights Act of 1991. The pretext phase of the McDonnell Douglas scheme sets one allegedly illegitimate rationale against a second, allegedly legitimate reason for the employment action. However, a defendant could have illegitimately considered a plaintiff's race, gender, or other enumerated classification in making its employment decision and, at the same time, legitimately considered other factors,

one of which it proffered to the court in satisfaction of its productive burden. Similarly, a plaintiff can fail to prove that the defendant's proffered reason is false without automatically or necessarily failing to prove that another motivating factor was illegitimate. In other words, when a defendant prevails under the McDonnell Douglas scheme, the court is left with a classic mixed-motive scenario, in which both alleged motives could have factored into the defendant's ultimate employment decision. This is clearly impermissible under the Civil Rights Act of 1991, which holds an employer liable for considering a discriminatory motive, even when other, legitimate and sufficient motives were also considered.

The "same decision test" that the Civil Rights Act requires defendants to pass as part of a limited affirmative defense functions just as effectively when applied to single-motive claims as it does when applied to mixed-motive claims. In fact, the same decision test functions better than the alternative McDonnell Douglas pretext analysis. The pretext analysis functions by first presuming the mutual exclusivity of two competing rationales. Then it focuses on the validity or falsity of one of the two rationales: the defendant's proffered legitimate reason for the employment decision. In contrast, the same decision test functions by comparing all of the alleged factors together. In that way, it isolates the main motivation for the employer's decision. The same decision test offers courts a method with which to compare two or more motivating factors and to determine which of the two or more factors acted as the "but for" cause or causes of the employment decision. Thus, Defendants may severely limit a plaintiff's relief if it can pass the same decision test, thereby proving that

a legitimate but-for cause existed for its employment decision. However, the defendant is still liable for considering the illegitimate factor. The usefulness of the same decision test further supports the application of the Civil Rights Act of 1991 to single-motive claims.

Finally, the Court observes that while plaintiffs alleging a single-motive violation of Title VII may avail themselves of the protections afforded by the Civil Rights Act of 1991 in the same way that plaintiffs are permitted to do in mixed-motive cases, courts must continue to follow the burden shifting scheme articulated in McDonnell Douglas for actions brought under the MHRA. This is because, to this date, Minnesota law has not incorporated the holding in Price Waterhouse or the relevant provisions of the Civil Rights Act of 1991. See McGrath v. TCF Bank Sav., FSB, 502 N.W.2d 801, 806 (Minn. App. 1993) (citing Anderson v. Hunter, Keith, Marshal & Co., 417 N.W.2d 617, 626 (Minn. 1988) (declining to follow the "same decision analysis" because it would defeat the broad remedial provisions of the MHRA)). Therefore, the Court will analyze Dare's MHRA claim according to the McDonnell Douglas paradigm and her Title VII claim according to the allocation of burdens in the Civil Rights Act of 1991.

### C. Title VII Claim

To establish a prima facie case of race discrimination for a failure-to-hire claim, a plaintiff must show the following four elements:

1. That she is a member of the protected class;
2. That she applied and was qualified for a job for which the employer was

seeking applicants;

3. That she was rejected; and

4. That after rejecting plaintiff, the employer continued to seek applicants with plaintiff's qualifications.

Caviness v. Nucor-Yamato Steel Co., 105 F.3d 1216,1223 (8th Cir. 1997). The Court held in its previous Order that questions of fact remain on Dare's claim that Wal-Mart refused to hire her as a lab technician in the vision center of its Elk River store. In addition, the Court held that questions of fact remain with respect to Dare's claim that Wal-Mart refused to hire her for any other open position at the Elk River store because of her race.

The Court sua sponte reconsiders its holding concerning the lab technician position. In its Motion for Summary Judgment, Wal-Mart exclusively relied on after-acquired evidence to prove the qualifications of Dare and of the employee who was hired for the lab technician in place of Dare. Because the Court found this reliance misplaced, it concluded that questions of fact remained. However, even though Wal-Mart did not raise this argument, the Court now concludes that Dare has failed to create a question of fact on the second element of her prima facie case. Specifically, the record shows that while Wal-Mart accepted applications for the lab technician position, it did so conditionally. Wal-Mart expected that an employee from another store would transfer to the Elk River store to fill the lab technician position. Thus, the applications for this position were accepted only in the event that the current Wal-Mart employee did not transfer to the Elk River store. She did not transfer and

therefore, there is no question of fact on whether Wal-Mart was seeking applicants for the lab technician position.

The Court does not reconsider its decision that questions of fact remain on each of the elements of Dare's prima facie case regarding the other open positions at the vision center and the other open positions at the Elk River store. Accordingly, this portion of Dare's title VII claim may proceed to trial. In light of the Supreme Court's decision in Desert Palace, Wal-Mart shall have an opportunity to file a motion for summary judgment on its affirmative defense to damages according to 42 U.S.C. § 2000e-5 (2)(B).

**D. MHRA Claim**

In its previous Order, the Court held that questions of fact remained on the disputed elements of Dare's MHRA claim for unlawful refusal to hire. Specifically, Dare claims that Wal-Mart refused to hire her for the lab technician position at the Elk River store and that Wal-Mart refused to hire her for all other open positions at the Elk River store. The Court reconsiders this holding sua sponte. Just as with her Title VII claim, Dare has failed to create a question of fact on whether Wal-Mart was seeking applicants for the lab technician position. However, the Court does not reconsider its holding that questions of fact remain with respect to other open positions at the Elk River store.

Claims under the MHRA are evaluated according to the burden-shifting scheme articulated in McDonnell Douglas, and are not affected by the Supreme Court's holding in Desert Palace. See McGrath, 502 N.W.2d at 806; Anderson, 417 N.W.2d at 626. With respect to this claim, Wal-Mart's proffered legitimate, nondiscriminatory reason relies solely

on after acquired-evidence. As determined in the previous Order, after-acquired evidence is irrelevant to the question of liability in employment discrimination cases. Accordingly, Wal-Mart has failed to present a legitimate, nondiscriminatory reason for its refusal to hire Dare for any other open position at its Elk River store. Thus, the burden does not shift to Dare and she has adduced sufficient evidence to proceed to a jury on this portion of her MHRA claim. See Hutson, 63 F.3d at 777 (citing Texas Dep't Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (U.S. 1981) ("if the employer is silent . . . the court must enter judgment for the plaintiff.")); Casey v. Riedel, 195 F. Supp. 2d 1122, 1134 (S.D. Iowa 2002) ("Because Defendants did not meet their burden to offer a legitimate, nondiscriminatory reason for their actions, the burden did not shift to Casey to show Defendants' nondiscriminatory reason was a pretext for discrimination.") (citing Hunt v. Nebraska Power Dist., 282 F.3d 1021, 1029-30 (8th Cir. 2002). Accordingly, the Motion for Summary Judgment is denied as to Dare's MHRA claim that Wal-Mart refused to hire her for positions other than the lab technician position at the Elk River store.

**CONCLUSION**

The unambiguous language of the Civil Rights Act of 1991 directly conflicts with the practice of following the direct/indirect evidence distinction to determine whether to evaluate a discrimination claim under the McDonnell Douglas burden-shifting paradigm or the allocations of burdens set forth in the Civil Rights Act of 1991. In addition, the plain meaning of the Civil Rights Act of 1991, the false dichotomy produced by the McDonnell Douglas framework, the fact that when a defendant prevails under the McDonnell Douglas

paradigm the Court is left with a classic mixed-motive scenario, and the usefulness of the same decision test all support this Court's decision to apply the Civil Rights Act of 1991 to single-motive claims.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment on Plaintiff's Title VII and MHRA claims (Clerk Doc. No. 35) is **GRANTED** with respect to the lab technician position;

2. Defendant's Motion for Summary Judgment on Plaintiff's Title VII and MHRA claims (Clerk Doc No. 35) is **DENIED** with respect to all other open positions at the Elk River store;

3. To the extent that this Court's previous Order holds otherwise, it is **VACATED**; and

4. In light of the Supreme Court's decision in Desert Palace, Defendant has until June 19, 2003, to file a motion for summary judgment on its affirmative defense to damages under 42 U.S.C. § 2000e-5(2)(B); if filed, Plaintiff has until June 26, 2003 to respond to the motion; Defendant has until July 2, 2003 to reply to Plaintiff's response.

Dated: June 13, 2003

Paul A. Magnuson
United States District Court Judge